IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33964-5-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 34338-3-III) |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY HOWARD KELLER, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| JEFFREY HOWARD KELLER, | ) | |
| | ) | |
| Petitioner. | ) | |

PENNELL, J. — Jeffrey Keller has filed an appeal of his criminal resentencing

hearing and a personal restraint petition (PRP) challenging his conviction and sentence

for attempted third degree theft, second degree theft, and trafficking in stolen property.

We affirm Mr. Keller's conviction and sentence, and dismiss his PRP.

FACTS[1]

On July 9, 2011, the loss prevention officer at Wholesale Sports observed Mr. Keller attempt to peel the tags off less expensive fishing rods and place them on more expensive fishing rods. A police officer contacted Mr. Keller in the store but did not arrest him.

On August 2, 2011, Mr. Keller purchased, several hours apart, two vacuum cleaners from a Home Depot store. Each vacuum rang up for $79.96, the price for a Hoover vacuum. However, the two vacuums Mr. Keller left the store with were Dysons, one valued at $549.00 and the other valued at $449.00.

On August 3, 2011, Mr. Keller purchased, also from Home Depot, a third vacuum that also rang up at the price for a Hoover. It too was a Dyson, valued at $549.00. The Home Depot loss prevention manager noticed Mr. Keller take a UPC[2] sticker from his pocket and place it on the Dyson box. He detained Mr. Keller, who admitted to the two vacuum thefts from the day before. Mr. Keller stated he had given the vacuums to a friend, who sold them.

---

[1] Unless otherwise noted, the following facts are taken from the commissioner's ruling in Mr. Keller's previous appeal. The ruling is attached as appendix C to Mr. Keller's PRP. *See* Commissioner's Ruling, *State v. Keller*, No. 31317-4-III (Wash. Ct. App. Mar. 20, 2014).

[2] Universal Product Code.

2

Following a bench trial, Mr. Keller was convicted of attempted third degree theft, second degree theft, and trafficking in stolen property. The court sentenced Mr. Keller to 364 days for attempted third degree theft, 28 months for second degree theft, and 84 months for trafficking in stolen property, all to run concurrently. Mr. Keller appealed, contending in relevant part that the evidence was insufficient, independent of his own statements to the police, to establish the corpus delicti of the offense of trafficking in stolen property. Mr. Keller also contended that the court erred when it sentenced him to 364 days for attempted third degree theft. This court placed the appeal on its motion docket for disposition on the merits and affirmed Mr. Keller's convictions but remanded for resentencing on the attempted third degree theft conviction congruent with the statutory maximum of 90 days.

At resentencing, the superior court and the State noted the only thing to do was change the standard range on the attempted third degree theft to reflect 0 to 90 days as opposed to 0 to 364 days. However, for the first time, Mr. Keller questioned his criminal history, arguing some of his prior convictions were the same criminal conduct:

> [Defense counsel]: [Mr. Keller] is disputing his criminal history. This is the first I've heard of that. . . . So he is disputing the ten points that he has. One of the—just so Your Honor knows, as to no number 10 shows the date of sentence the year 2000, but the date of the crime is 2006. There are errors there. There is also his [belief] that some of these were the same criminal conduct and were indicated on the Judgment and Sentence and

3

shouldn't count for a separate point each. Now I haven't seen any of these. I don't know. This is what I've been told this morning. . . . He is asking for counsel. Your Honor knows I have been appointed for sentencing. He wants to file a motion to modify his Judgment and Sentence based on the offender score issue.

Verbatim Report of Proceedings (Dec. 17, 2015) at 3-4. The court did not address Mr. Keller's arguments and instead suggested Mr. Keller might try filing a PRP or CrR 7.8 motion. The court then resentenced Mr. Keller to 90 days for attempted third degree theft. The sentence for the two felony convictions remained the same.

No further action was taken on Mr. Keller's criminal history objections in superior court. On December 18, 2015, Mr. Keller filed a direct appeal of the resentencing decision. On April 13, 2016, Mr. Keller filed a PRP challenging his conviction. The two matters have been consolidated for consideration by this court.

## ANALYSIS

*Direct appeal*

Mr. Keller contends the resentencing court erred by declining to address whether his offender score had been miscalculated because certain convictions constituted the same criminal conduct. The issue raised by Mr. Keller was outside the scope of our

4

remand order, and it had no bearing on the resentencing decision before the court.[3] While

the resentencing court may have had discretion to expand the scope of the issues before it,

*State v. Kilgore*, 167 Wn.2d 28, 38, 216 P.3d 393 (2009), Mr. Keller never met his burden

of establishing that his prior convictions involved the same criminal conduct. *State v.*

*Aldana Graciano*, 176 Wn.2d 531, 539, 295 P.3d 219 (2013). There was no error in the

superior court's refusal to consider Mr. Keller's challenge.

*PRP*

The parties dispute whether Mr. Keller's PRP was timely filed. Although Mr.

Keller filed his PRP within one year[4] of his resentencing, he did not file within one year

of the mandate that was issued after his first appeal. In some circumstances, resentencing

extends the PRP deadline, *In re Personal Restraint of Skylstad*, 160 Wn.2d 944, 948-52,

162 P.3d 413 (2007), but in other circumstances it does not. *Kilgore*, 167 Wn.2d at 39-

41. We need not resolve whether Mr. Keller's resentencing extended the PRP deadline in

his case. The one-year deadline is not jurisdictional, *In re Personal Restraint of*

*Haghighi*, 178 Wn.2d 435, 447, 309 P.3d 459 (2013), and Mr. Keller's arguments fail on

---

[3] Mr. Keller's offender score was not relevant to calculating his sentencing range for misdemeanor theft.

[4] Under RCW 10.73.090, a PRP must be filed within one year of finality of the judgment.

their merits.

Mr. Keller raises two main claims in his PRP: (1) ineffective assistance of counsel and (2) newly discovered evidence. Each is addressed in turn.

*Ineffective assistance of counsel*

To prevail on a collateral attack on a judgment and sentence by way of PRP, a petitioner must establish a constitutional error has occurred that has resulted in actual and substantial prejudice. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 347, 325 P.3d 142 (2014). If a petitioner makes a successful ineffective assistance of counsel claim, "he has necessarily met his burden to show actual and substantial prejudice." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

To establish ineffective assistance of counsel, a petitioner must overcome the presumption that counsel was effective. *Gomez*, 180 Wn.2d at 347. To do this, the petitioner must demonstrate (1) defense counsel's conduct was deficient, i.e., counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for the deficient conduct, the outcome of the proceeding would have been different. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251-52, 172 P.3d 335 (2007).

Mr. Keller first argues counsel's performance was deficient because he failed to raise the issue of corpus delicti[5] until closing argument. Mr. Keller asserts that based on the timing of counsel's argument, the State was allowed to make a "Logical and reasonable inference" argument rather than provide independent corroborating evidence. Appellant's PRP Reply Br. at 10-11.

Mr. Keller's complaint is unfounded. The State's burden to establish corpus delicti does not change depending on how the defense presents its case. Regardless of defense tactics, the corpus delicti burden requires that the State produce independent evidence leading to a reasonable and logical inference that the defendant committed the crime charged. *State v. Brockob*, 159 Wn.2d 311, 327-29, 150 P.3d 59 (2006). Although the defense can sometimes relieve the State of this burden altogether by failing to raise corpus delicti in a timely manner, that is not what happened here. Mr. Keller's corpus delicti arguments were addressed on the merits in his initial appeal. Nothing about defense counsel's handling of Mr. Keller's case impacted our court's prior ruling. Mr. Keller's corpus delicti arguments failed for lack of factual support, not because of trial counsel's strategy.

---

[5] Under the corpus delicti rule, a defendant may not be convicted on the basis of a confession that is unsupported by independent proof. *State v. Ray*, 130 Wn.2d 673, 679, 926 P.2d 904 (1996).

7

Mr. Keller next argues that defense counsel put his own interests before the best interests of his client by failing to move for dismissal of the charges following an initial mistrial. Mr. Keller's arguments mischaracterize the facts. Defense counsel did move for dismissal. However, in apparent recognition that this remedy was unlikely, *see Oregon v. Kennedy*, 456 U.S. 667, 672-73, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982) (explaining that the remedy is the exception, not the rule), defense counsel alternatively asked that the State cover Mr. Keller's attorney fees should he be burdened with retrial. Defense counsel's efforts reflect unfettered zealous advocacy on behalf of his client. There was no conflict.[6]

Apart from his complaints regarding corpus delicti and the motion for mistrial, Mr. Keller also claims defense counsel withheld information, did not help him file anything because of his inability to pay, and failed to present alibi witnesses at trial. Mr. Keller only makes bald assertions and conclusory allegations; these are insufficient to support his claim. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992)

---

[6] Mr. Keller complains that defense counsel should have used the term "misconduct" to describe the prosecutor's conduct instead of "mismanagement." PRP at 4. We disagree. Prosecutorial misconduct is a term of art that carries the unfortunate connotation of intentional misconduct. Mere use of the term can create confusion and unnecessary hostility. Terms such as "mismanagement" better describe most defense criticisms of prosecutorial mistakes and serve to focus the court's attention on the controlling law as opposed to personal or professional attacks.

(affidavits or other corroborative evidence required when petitioner relies on information within knowledge of others).

*Newly discovered evidence*

Lastly, Mr. Keller claims newly discovered evidence shows his actual and factual innocence. Contrary to the statements attributed to him at trial, Mr. Keller now claims he purchased one vacuum for his home and two for his tattoo business. He claims he maintained possession of the vacuums and immediately returned them to the court as evidence upon police request. Mr. Keller states defense counsel told him the vacuums would be used as evidence and the court would be made aware that he gave the vacuums to the police. However, after reading the trial transcripts, Mr. Keller learned no mention of this was made.

Mr. Keller has failed to establish the existence of newly discovered evidence. He was aware of the proffered evidence before trial and was present at trial when evidence was admitted. Given these circumstances, the evidence identified by Mr. Keller was not new. *In re Pers. Restraint of Faircloth*, 177 Wn. App. 161, 165-66, 311 P.3d 47 (2013). In addition, Mr. Keller has failed to show how admission of the physical vacuums into evidence at trial would have changed the nature of his case. There was testimony confirming that law enforcement had custody of the two Dysons identified in Mr. Keller's

9

petition. The third Dyson vacuum never left the store. Introduction of the vacuums into evidence would not have added anything to Mr. Keller's defense.

## CONCLUSION

We affirm the amended felony judgment and sentence of the superior court and dismiss Mr. Keller's PRP. Any request for costs and response thereto may be taken up under RAP 14.2.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                                   Siddoway, J.