IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | No. 85905-6-I |
| KOLLIN LORIK FOLSOM, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

CHUNG, J. — In 2001, Kollin Folsom, a 16-year-old juvenile at the time of the crime, was convicted of murder in the first degree committed with a deadly weapon and received a sentence of 50 years, more than 21 years above the standard adult range. Folsom filed this personal restraint petition (PRP) in 2021, twenty years after he was sentenced.

His petition claims his restraint is unlawful because newly discovered neurodevelopmental evidence about young adults was unavailable when he was sentenced and because the court failed to consider the mitigating qualities of his youth in violation of Houston-Sconiers.[1] He also claims his sentence is invalid on its face in violation of Blakely v. Washington[2] because the aggravating circumstances supporting his exceptional sentence were not proven to a jury. He asks this court to grant his petition, order his resentencing, and hold that

---

[1] State v. Houston-Sconiers, 188 Wn.2d 1, 9, 391 P.3d 409 (2017).
[2] 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

Washington's early release for juvenile convictions statute, RCW 9.94A.730, is unconstitutional as applied to him.

Folsom does not establish that his sentence is facially invalid under Blakely. We conclude that Folsom's newly discovered evidence claim does not satisfy the standard under RCW 10.73.100(1) for an exemption from the time bar. Because Folsom's remaining claim based on Houston-Sconiers also requires the application of one of the exemptions set forth in RCW 10.73.100, we dismiss the petition under the mixed petition rule.

## FACTS

In his direct appeal, the facts of the crime for which Folsom was sentenced in 2001 were described as follows:

> On December 3, 1999, Washougal police arrested four teenagers[,] Kollin Folsom,[3] Jason Schrader, Tiffany Williams (Williams), and Elijah Klar[,] for the murder of Clinton Williams (Mr. Williams). Mr. Williams was Williams's father.
>
> Folsom and Williams were romantically involved at the time of the murder, and Folsom knew that Williams's relationship with her parents had deteriorated in recent months. In fact, Williams had run away from home about a month before the murder. During her short absence, she stayed with Folsom.
>
> Williams's mother, Jadean Williams, and her youngest child, Joey, were away from home when the murder occurred on November 11, but returned home to find Mr. Williams's body on November 14.
>
> Mr. Williams died from multiple sharp-force injuries. The State's forensic pathologist testified that Mr. Williams received at least 75 such injuries to his back, shoulder, arms, head, and neck. But "[t]here was so much intersecting and so many in the back of the head area that it really wasn't possible to accurately count all of

---

[3] Folsom's date of birth is January 28, 1983. Clerk's Papers 18.

2

them." [Alteration in original.] . . . A forensic scientist described the wounds as "long and linear, consistent with a machete like object or a weapon having a long linear edge."

....

The State charged Folsom, Williams, and Schrader with first degree murder.

....

The jury found Folsom guilty of first degree murder. It also returned a special verdict, finding that Folsom used a deadly weapon other than a firearm in the crime. Folsom received a 600-month exceptional sentence.

State v. Folsom, noted at 118 Wn. App. 1077, 2003 WL 22391028 at *1-*2. This court affirmed Folsom's conviction and sentence. Id. at *17.

In 2007, at the age of 24, Folsom escaped from prison. Charged with escape and kidnapping, he pleaded no contest to kidnapping a prison guard, and the escape charge was dismissed. He was sentenced to 10 years to run concurrently with his existing sentence.

In 2020, Folsom petitioned the Indeterminate Sentence Review Board (ISRB) for early release under RCW 9.94A.730. The ISRB denied his petition because he had been convicted of another crime after his 18th birthday and was therefore "not currently eligible to submit another petition" under the statute.

In 2021, Folsom filed a pro se PRP requesting relief because the trial court failed to consider the mitigating factors of youth, citing RAP 16.4(c)(2), (3), and (4). In its initial response, the State conceded that Folsom's petition was timely under RCW 10.73.100(6) but argued that Folsom had an adequate

remedy under the early release statute, RCW 9.94A.730. Folsom's petition was then referred to a panel and counsel was appointed. In his amended supplemental brief, Folsom again argued that he was entitled to relief because a significant retroactive change in the law is material to his sentence, the judgment and sentence is facially invalid, and newly discovered evidence renders his restraint unlawful. In its supplemental response, the State retracted its earlier concession that the petition was timely and also withdrew its argument that Folsom had an adequate remedy under the early release statute, having learned from a subsequent criminal history check about Folsom's conviction after age 18 for kidnapping.[4]

## DISCUSSION

Granting a PRP is "an extraordinary form of relief," so a petitioner must " 'meet a high standard before this court will disturb an otherwise settled judgment.' " In re Pers. Restraint of Hinton, 1 Wn.3d 317, 324, 525 P.3d 156 (2023) (quoting In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011)). An appellate court will grant relief only "if other remedies . . . are inadequate . . . and if such relief may be granted under RCW 10.73.090 or .100." RAP 16.4(d).

RCW 10.73.090 bars a petition filed "more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was

---

[4] The State's supplemental response corrected the record based on a subsequent, complete criminal history check on Folsom, who was serving his Washington sentence in Arizona when he escaped.

rendered by a court of competent jurisdiction." However, RCW 10.73.100 identifies exemptions from this time limit, stating, "The [one-year] time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds," listing six different grounds. RCW 10.73.100(1)-(6).

"[I]f one or more of the [asserted] grounds [for relief in the petition] falls within the exceptions in RCW 10.73.100 and one or more does not, then the petition is a 'mixed petition' which must be dismissed." In re Pers. Restraint of Hankerson, 149 Wn.2d 695, 700, 72 P.3d 703 (2003) (quoting In re Pers. Restraint of Stoudmire, 141 Wn.2d 342, 349, 5 P.3d 1240 (2000)). Under the mixed petition rule, the word " 'solely' in RCW 10.73.100 requires that a petition . . . which would make use of this section cannot be based on any grounds other than one or more of the six grounds in RCW 10.73.100." Stoudmire, 141 Wn.2d at 349. The mixed petition rule does not, however, preclude consideration of claims in a PRP involving the facial invalidity of a sentence because "[s]uch claims implicate RCW 10.73.090 and are thus not subject to the restrictive language in RCW 10.73.100." In re Pers. Restraint of Williams, 200 Wn.2d 622, 632, 520 P.3d 933 (2022) (citing Hankerson, 149 Wn.2d at 700); accord In re Pers. Restraint of Kennedy, 200 Wn.2d 1, 12-13, 513 P.3d 769 (2022) (an untimely PRP "is procedurally barred unless [the petitioner's] judgment and sentence is facially invalid *or* presents solely grounds for relief that are exempt from the time bar under RCW 10.73.100") (emphasis added).

Folsom's PRP presents three claims for relief, citing RAP 16.4(c)(2), (3), and (4). First, he argues his sentence is unconstitutional on its face because it violates Blakely v. Washington; this claim is cognizable under RAP 16.4(c)(2), as it alleges the conviction was obtained in violation of the federal or state constitution. Second, Folsom also seeks relief based on neurodevelopmental studies that became available after he was sentenced; RAP 16.4(c)(3) provides that a restraint is unlawful if "[m]aterial facts exist which have not been previously presented and heard" that require vacation of the conviction or sentence. Finally, Folsom argues he is entitled to relief because Houston-Sconiers is a significant change in the law material to his sentence; RAP 16.4(c)(4) allows relief if there is a material, significant, and retroactive change in the law.

I.  Facial invalidity under *Blakely*

Folsom argues his sentence is invalid on its face because aggravating factors were not proven to a jury, so "[t]his [c]ourt should take this opportunity to analyze whether it should apply Blakely retroactively to Mr. Folsom's case." This claim is not subject to RCW 10.73.090's time bar, as it challenges the facial validity of his sentence. The State argues precedent precludes this claim. We agree with the State.

Folsom was sentenced above the standard range based on three findings of fact and related conclusions of law made by the trial court. First, the court found that "the offense manifested deliberate cruelty to the victim" because of the number of blows inflicted, the victim's shattered skull, the use of a stun gun, and

6

the "extended amount of time" it took to kill Mr. Williams. Second, the court found that Mr. Williams "was particularly vulnerable" because he was alone and asleep in his bed when he was attacked, he was incapacitated, and he was unable to resist. Finally, the court found that Mr. William's "zone of privacy was invaded" because he was "murdered while asleep in his bedroom, in his own home, in the middle of the night." The court's conclusions of law state in relevant part that the offense manifested deliberate cruelty, that Mr. Williams was particularly vulnerable, and that Mr. Williams's zone of privacy was invaded.

Folsom argues that because the aggravating factors were found by a court and not proven to a jury beyond a reasonable doubt, and because "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury," his sentence violates the Sixth Amendment. Supplemental Brief of Petitioner at 42 (quoting State v. Allen, 192 Wn.2d 526, 534, 431 P.3d 117 (2018) (quoting Alleyne v. United States, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013))). But as the Washington Supreme Court has held, "Blakely itself is not retroactive and does not apply to judgments . . . that were final when it was announced." In re Pers. Restraint of Scott, 173 Wn.2d 911, 918, 271 P.3d 218 (2012) (citing State v. Evans, 154 Wn.2d 438, 444, 114 P.3d 627 (2005)).

Folsom nevertheless suggests that this court should revisit the question of the retroactive application of Blakely because Evans, the first case to state that Blakely was not retroactive, stated so in a footnote and relied on the federal guidelines, which are advisory, unlike Washington's, which are mandatory. See

7

Evans, 154 Wn.2d at 447 n.2. He contends that the federal guidelines do not implicate the same constitutional concerns as Washington's because Washington law requires facts to be proved to a jury beyond a reasonable doubt. Further, Folsom suggests a change in the burden of proof is "substantive rather than procedural for retroactivity purposes."

Here, Folsom's sentence became final in 2003. Blakely was not decided until 2004, and the Washington Supreme Court has repeatedly held that Blakely is not retroactive on collateral review. State v. Kilgore, 167 Wn.2d 28, 35, 216 P.3d 393 (2009) ("Blakely applies only to cases pending on direct review or not yet final."); Evans, 154 Wn.2d at 442 ("We conclude that neither Apprendi nor Blakely applies retroactively on collateral review to convictions that were final when Blakely was announced."); Scott, 173 Wn.2d at 918. These cases are controlling here. We therefore agree with the State that Folsom's sentence is not invalid on its face under Blakely.

## II.     Newly discovered evidence

Folsom claims an exemption to the time bar applies because newly discovered evidence of adolescent brain development is material to his case and likely to alter the sentence imposed on him. Suppl. Br. of Pet'r at 17 (citing RCW 10.73.100(1) and RAP 16.4(c)(3)). The State argues Folsom's evidence does not constitute newly discovered evidence, so his claim is time-barred. We agree with the State.

RCW 10.73.100 states:

> The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds:
>
> (1) Newly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion.

For this exemption to apply, "a petitioner must present evidence that '(1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching.' " Kennedy, 200 Wn.2d at 13 (quoting In re Pers. Restraint of Fero, 190 Wn.2d 1, 15, 409 P.3d 214 (2018)).

Folsom argues that he was sentenced before scientific evidence documented the undeveloped nature of an adolescent brain, this new evidence is material to his sentence, and it is not merely cumulative or impeaching. Although the court rejected the same argument in Kennedy, Folsom attempts to distinguish his case. In Kennedy, the petitioner was sentenced in 2007. 200 Wn.2d at 4. The petitioner argued for an exemption from the one-year time bar based on "newly discovered evidence concerning the neurodevelopment of young adults that was not available at the time of his sentencing" and attached his own supporting declaration[5] and a supporting declaration from a developmental psychologist. Id. at 9. The court reasoned that the newly discovered evidence exemption did not

---

[5] The court noted that Kennedy did not argue that his own declaration was newly discovered evidence. Kennedy, 200 Wn.2d at 14 n.2.

apply because the studies cited by the petitioner were available "as early as 2003" and 2004, and the petitioner did not make "a sufficient showing that his proffered new evidence would have changed the trial court's discretionary sentencing decision." Id. at 18, 20. The court held that the petitioner failed to satisfy the test for the exemption to apply. Id. at 18.

Here, Folsom points out the neurodevelopmental studies regarding juveniles cited in Kennedy that were available in 2003 and 2004 were unavailable when he was sentenced in 2001. As new evidence, he cites studies and other documents that were not published until 2004, 2008, 2017, and 2018.[6] However, as the court in Kennedy noted, since 1997, courts have recognized youth as a potentially mitigating factor if a defendant can show how youthfulness impacted their crime. Kennedy, 200 Wn.2d at 11 (citing State v. Ha'mim, 132 Wn.2d 834, 846, 940 P.2d 633 (1997)).

Furthermore, the Kennedy court reasoned, "a defendant need not present expert testimony setting out the scientific basis for recognizing similarities in the neurodevelopment of juveniles and emerging adults in order to argue for a mitigated sentence." 200 Wn.2d at 18; see also id. at 16 (" 'lay testimony may be sufficient.' ") (quoting State v. O'Dell, 183 Wn.2d 680, 697, 358 P.3d 359 (2015)).

---

[6] Jay N. Giedd, Structural Magnetic Resonance Imaging of the Adolescent Brain, 1021 Ann. N.Y. Acad. Sci. 77 (2004); Nitin Gogtay, et al., Dynamic Mapping of the Human Cortical Development During Childhood Through Early Adulthood, 101 Proc. Nat'l Acad. Sci. 8174, 8177 (2004); Elizabeth S. Scott & Laurence Steinberg, Rethinking Juvenile Justice 34, 40-44 (2008); Laurence Steinberg, A Social Neuroscience Perspective on Adolescent Risk-Taking, 28(1) Dev. Rev. 78-106 (2008); U.S. Sent'g Comm'n, Youthful Offenders in the Federal System 1, 7 (2017); American Bar Association (ABA) Resolution 111: Death Penalty Due Process Review Project Section of Civil Rights and Social Justice 7 (2018).

Lay testimony about youthfulness, including Kennedy's own statements, "could have been presented . . . and considered by the sentencing court." Kennedy, 200 Wn.2d at 18. Thus, when the Kennedy court decided the petitioner failed to satisfy the test for the exemption to apply, it reasoned that "it cannot be said that the argument [the petitioner] now seeks to make was unavailable to him," because the petitioner could have offered his own testimony about the neurodevelopment of juveniles and emerging adults. Id. at 18. The same is true here for Folsom.

Further, Folsom does not explain why he waited until 2021 to file his PRP when the exemption requires that a petitioner "act[ ] with reasonable diligence in discovering the evidence *and filing the petition.*" RCW 10.73.100(1) (emphasis added); see In re Pers. Restraint of Faircloth, 177 Wn. App. 161, 165 n.4, 311 P.3d 47 (2013) ("To overcome the time bar, [petitioner] would also have to show that he acted with reasonable diligence in bringing his PRP.").

Folsom also needs to show the studies he cites are material to his sentence and not merely cumulative or impeaching. This means he needs to "connect[ the] new neuroscience to [his] behavior." In re Pers. Restraint of Davis, 200 Wn.2d 75, 86, 514 P.3d 653 (2022). But Folsom argues only that he could not have discovered the specific studies that would be published in the future when he was sentenced, and those studies would not have been cumulative because the court did not consider his youth. This is not sufficient to connect the research to his behavior, particularly because no expert testimony was required

11

to establish how youthfulness impacted the crime and Folsom's own lay testimony would have been sufficient.

Nor, beyond a conclusory statement that it "is probable that the court would not have imposed the same 50-year aggravated sentence" on him, does Folsom show how the type of research he cites, if available when he was sentenced, would have "change[d] the result" of his sentencing. Kennedy, 200 Wn.2d at 14. In rejecting the petitioner's argument that the exemption for newly discovered evidence applied, the Kennedy court reasoned, "It is entirely speculative whether the additional studies [the petitioner] points to would have persuaded the trial court to impose a mitigated sentence below the standard range, particularly in light of the aggravating circumstances the trial court found." Id. at 20. Folsom shares with the petitioner in Kennedy an exceptional high sentence, id. at 8, aggravating circumstances found by the court, and the lack of an argument to show that the court would have sentenced him other than to an exceptional high sentence. Thus, as in Kennedy, it is speculative whether the research Folsom cites would have changed the result of his sentencing.

We conclude that Folsom does not present evidence that could not have been discovered before trial by the exercise of due diligence. He does not show how the new neuroscience published after he was sentenced connected to his past conduct, or that such evidence is material to, or likely to change, his exceptional sentence. Therefore, the exemption to the time bar for newly discovered evidence, RCW 10.73.100(1), does not apply to his petition's claim

for relief under RAP 16.4(c)(3) based on material facts not previously heard that in the interest of justice require vacating his sentence.

    III.      <u>Application of the mixed petition rule</u>

At oral argument and in a subsequent filing, Folsom argues that he has "raised a single <u>Houston-Sconiers</u> claim" and that, while two different RCW 10.73.100 exemptions to the time bar may apply, his single claim "is not time-barred if it meets any of the exceptions in RCW 10.73.100."[7] In its briefing, the State, albeit in a fleeting fashion, asserts that because the newly discovered evidence exemption does not apply to Folsom's claim, the petition is mixed and must be dismissed "even assuming Folsom has elsewhere raised a non-time barred claim."[8] We conclude the mixed petition rule applies. Because Folsom's claim based on newly discovered evidence is untimely, we must dismiss his other claim that relies on an exemption to the time bar under RCW 10.73.100(6).

While appellate courts "generally refrain from deciding cases based on an argument that the State does not make . . . 'RCW 10.73.090 is a mandatory rule

---

[7] At oral argument, Folsom argued that his petition makes only one claim subject to the time bar. Wash. Ct. of Appeals oral argument, <u>In re Pers. Restraint of Folsom</u>, No. 85905-6-I, (Jan. 9, 2023) at 9 min., 26 sec., <u>video recording by</u> TVW, Washington State's Public Affairs Network, http://www.tvw.org./video/division-1-court-of-appeals-2024011230/?eventID=2024011230. After oral argument, Folsom filed a response to a statement of additional authorities filed by the State reiterating his position that "[he] raised a single <u>Houston-Sconiers</u> claim."

[8] Despite making this argument in its brief, at oral argument the State "agree[d]" with Folsom that his petition makes only one claim subject to the time bar. Wash. Ct. of Appeals oral argument, <u>supra</u> at 11 min., 55 sec. Following oral argument, the State filed a statement of additional authorities suggesting Folsom's petition is mixed as to its claims requiring an exemption from the time bar. Whatever the State's position, as noted above, Folsom's petition, reply, and supplemental brief all claim relief under RAP 16.4(c)(3) and (4); both of these grounds for relief require an exemption from RCW 10.73.090's time bar.

that acts as a bar to appellate court consideration of PRPs filed after the limitation period has passed.' " In re Pers. Restraint of Young, 21 Wn. App. 2d 826, 830 n.1, 508 P.3d 687 (2022) (quoting In re Pers. Restraint of Bonds, 165 Wn.2d 135, 140, 196 P.3d 672 (2008) (explaining the time bar is a "mandatory bar" to appellate court consideration "unless the petitioner demonstrates that the petition is based on one of the exemptions enumerated")).

Under RAP 16.4(d), an appellate court will grant relief only if other remedies are inadequate and "relief may be granted under RCW 10.73.090 or .100." Folsom's initial and supplemental petitions both claim his restraint is unlawful based on RAP 16.4(c)(2), (3), and (4). RAP 16.4(c)(2) provides that a restraint is unlawful if a conviction or sentence is unconstitutional. Under RAP 16.4(c)(3), a restraint is unlawful if "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction [or] sentence . . . ." RAP 16.4(c)(4) provides that a restraint is unlawful if "[t]here has been a significant change in the law . . . which is material to the conviction, sentence, or other order . . . and sufficient reasons exist to require retroactive application of the changed legal standard." While a RAP 16.4(c)(2) claim for relief from an unconstitutional conviction or sentence may be exempt from the one-year time bar because it challenges the facial validity of a sentence, see RCW 10.73.090, claims for relief under RAP 16.4(c)(3) "relate" to the exemption under RCW 10.73.100(1). Kennedy, 200 Wn.2d at 19. Similarly, the exemption in RCW 10.73.100(6) is "echoed in RAP 16.4(c)(4)." In re Pers.

Restraint of Domingo-Cornelio, 196 Wn.2d 255, 262 n.3, 474 P.3d 524 (2020).

While Folsom argues he raised only "a single Houston-Sconiers claim," his

petition, reply, and supplemental brief all expressly claim relief under RAP

16.4(c)(3) and (4), two different grounds for relief that require and align with

different exemptions from the time bar, RCW 10.73.100(1) and .100(6),

respectively.

As discussed above, Folsom cannot show that his claim is timely under

the newly discovered evidence exemption to the time bar, RCW 10.73.100(1), so

he cannot claim relief under RAP 16.4(c)(3). Under the mixed petition rule,

because his RAP 16.4(c)(3) claim is untimely, other claims in Folsom's petition

that depend on an exemption under RCW 10.73.100 "must be dismissed."

Hankerson, 149 Wn.2d at 702. "Under such circumstances the court will not

analyze every claim that is raised in order to determine or advise which claims

are time barred and which are not, nor will it decide claims under RCW

10.73.100 that are not time barred." Id. at 703.

For example, in Stoudmire, first, the court concluded the petitioner had

submitted a mixed petition because the petitioner submitted more than one claim

requiring an exemption from the time bar. 141 Wn.2d at 349. Then, the court did

not dismiss the petitioner's four claims of facial invalidity, id. at 351,[9] but it did

---

[9] The Stoudmire court did not consider the petitioner's pro se claim that the trial court incorrectly calculated his offender score "although that claim might fit within an RCW 10.73.090 exception," because the petitioner presented no argument for the claim. Stoudmire, 141 Wn.2d at 350.

apply the mixed petition rule to dismiss the petitioner's claim that also depended on an exemption because "claims that depend on .100 are barred from consideration by this court because the petitioner submitted a mixed petition." Id. at 350. The court noted both that an exemption may have applied to the claim it dismissed and that the petitioner could resubmit his claim. Id.

Like the petition in Stoudmire, Folsom's petition is mixed because it contains more than one claim for relief that requires an exemption from the time bar and no exemption applies to at least one of those claims—i.e., at least one claim is time-barred. As a result, as in Stoudmire, Folsom's RAP 16.4(c)(4) claim, which requires an exemption under RCW 10.73.100(6) for a significant and retroactive change in law material to his sentence, is "barred from consideration." Stoudmire, 141 Wn.2d at 350.[10] Thus, our analysis of Folsom's petition "must" end here with its dismissal. See Williams, 200 Wn.2d at 632.

CONCLUSION

Folsom filed this PRP well past the one-year statutory time limit. Because Folsom has not shown how his judgment and sentence is invalid on its face based on Blakely, he cannot claim the exemption under RCW 10.73.090. We conclude the newly discovered evidence exemption does not apply to his claim for relief under RAP 16.4(c)(3). We therefore dismiss the petition under the mixed

---

[10] Folsom may, of course, like the petitioner in Stoudmire, file a PRP in the future bringing this claim because RAP 16.4(d) bars a successive petition only where a prior application was heard and denied on the merits. Hankerson, 149 Wn.2d at 703. "Where claims are dismissed because they are contained in a mixed petition[,] the claims have not been considered on the merits; the dismissal is on procedural grounds." Id. at 704.

petition rule and decline to address the merits of Folsom's claim that he is entitled to relief because <u>Houston-Sconiers</u> was a significant and retroactive change in the law material to his sentence.

Chung, J.

WE CONCUR:

Feldman, J.                    Coburn, J.